# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0962-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GEORGE C. BENBOW,

     Defendant-Appellant.

_____

> Submitted November 6, 2019 – Decided December 19, 2019
>
> Before Judges Yannotti and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 09-01-0055.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).
>
> Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant George C. Benbow appeals from an order of the Law Division dated June 29, 2018, which denied his petition for post-conviction relief (PCR). We affirm.

I.

In January 2009, a Union County grand jury returned an indictment charging defendant with second-degree sexual assault of J.D., N.J.S.A. 2C:14-2(b) (count one); third-degree endangering the welfare of a child, J.D., N.J.S.A. 2C:24-4(a) (count two); second-degree sexual assault upon R.L., N.J.S.A. 2C:14-2(b) (count three); third-degree endangering the welfare of a child, R.L., N.J.S.A. 2C:24-4(a) (count four); second-degree sexual assault upon A.B., N.J.S.A. 2C:14-2(b) (count five); third-degree endangering the welfare of a child, A.B., N.J.S.A. 2C:24-4(a) (count six); second-degree sexual assault upon A.P., N.J.S.A. 2C:14-2(b) (count seven); third-degree endangering the welfare of a child, A.P., N.J.S.A. 2C:24-4(a) (count eight); second-degree attempted sexual assault upon N.K., N.J.S.A. 2C:5-1, N.J.S.A. 2C:14-2(b) (count nine); third-degree endangering the welfare of a child, N.K., N.J.S.A. 2C:24-4(a) (count ten); second-degree attempted sexual assault upon R.P., N.J.S.A. 2C:5-1, N.J.S.A. 2C:14-2(b) (count eleven); and third-degree

A-0962-18T3

endangering the welfare of a child, R.P., N.J.S.A. 2C:24-4(a) (count twelve).[1] The court later severed counts eleven and twelve but permitted joinder of the other counts for trial.

Defendant was thereafter tried before a jury. At the trial, the State presented evidence, which established that during the summer of 2008, defendant was serving as a pastor of a church in Plainfield, which operated a summer camp. The camp was held on the church's property, which was adjacent to the apartment where defendant resided.

In July 2008, A.P., a nine-year-old camper, volunteered to assist defendant carry some items from the church's parking lot to his apartment. A.P. testified that in the apartment, defendant grabbed her waist and "pulled [her] close to him" on a chair. She said she felt defendant's private part on her buttocks, and it was "[m]oving back and forth on [her]."

A.P. left the apartment and told her sister R.P., camp counselor J.D., and her cousin A.B. that "something weird happened" in defendant's apartment. A.B. told A.P. that the "same thing happened to her." That evening, A.P. told her mother that she went to defendant's apartment and "it felt like he was humping [her] butt." A.P.'s mother spoke with A.B.'s mother. She told her A.P.

---

[1] We identify the victims using initials. R. 1:38-3(c)(9); N.J.S.A. 2A:82-46.

A-0962-18T3

had reported something had happened between her and defendant, and that A.B. told A.P. that something similar had happened to her.

The next morning, A.P.'s mother and A.B.'s mother attended a meeting at the church. Defendant, defendant's son, and Diane Hathaway, a church administrator, also were present. Defendant denied any wrongdoing and called A.P. and A.B. "drama queens." Defendant stated that if the girls felt anything, it was probably his keys or wallet. Hathaway pointed out, however, that defendant never kept his keys or wallet in his pocket. At the end of the meeting, defendant started to cry, stated that he was sorry, and asked Hathaway to pray with him.

After the meeting, defendant's son and Hathaway questioned J.D. about A.P.'s behavior at the camp. She said that A.P. "is always sitting on someone's lap and that she tries to sit in her lap from time to time." Later that day, when Hathaway was alone with J.D., she asked why J.D. had not informed her of A.P.'s allegations. J.D. said that she did not know, and she was "afraid." She told Hathaway defendant also had abused her.

J.D. testified that when she was eight or nine years old, she and her family attended Bible study on Wednesday nights at the church. She stated that on more than one occasion, defendant told her to come and sit on his lap. She said

A-0962-18T3

she sat "between his private part, and [defendant] move[d] his leg up and down." She stated that she felt defendant's private part on her "rear end" and remembered that it was "hard."

A.B. testified that during the summer of 2008, after a religious service, she was in a pool with defendant. She stated that defendant moved to a sitting position and pulled her onto his lap. A.B. stated that defendant started "humping [her] butt" for "[m]aybe five minutes" while they remained in the pool. N.K. testified that when she was in the third grade, she was in the basement of defendant's house. N.K. said defendant asked her to sit on his lap and she "felt him get hard, and stuff . . . ."

In addition, R.L. testified that from 2003 to 2006, she used to babysit at the church on Tuesday nights during choir practice. R.L. said that approximately every other week, defendant would ask her to sit on his lap and he would speak with her. She stated that she "would feel his penis . . . pressing on [her]" like it was "bouncing" or "beating . . . against [her] . . . ." According to R.L, this conduct continued until she was thirteen years old.

The jury found defendant not guilty on counts one (sexual assault of J.D.), two (endangering the welfare of J.D.), and five (sexual assault of A.B.), but guilty on the remaining counts. At sentencing, the trial judge merged certain

A-0962-18T3

offenses and sentenced defendant to concurrent seven-year terms of imprisonment on counts three (sexual assault of R.L.) and seven (sexual assault of A.P.), each with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. On counts six and ten (endangering the welfare of A.B. and N.K., respectively), the judge sentenced defendant to concurrent four-year terms of incarceration, to run consecutive to the sentences imposed on counts three and seven.

The judge also sentenced defendant to a three-year period of special parole supervision; ordered defendant to register under Megan's Law, N.J.S.A. 2C:7-1 to -23; sentenced defendant to parole supervision for life; and imposed appropriate penalties and fees. The judge entered a judgment of conviction (JOC) dated November 9, 2012.

Defendant appealed from the JOC. We affirmed defendant's convictions and sentences. State v. Benbow, No. A-5026-12 (App. Div. July 7, 2016) (slip op. at 3). Defendant then filed a petition for certification with the Supreme Court. The Court denied the petition. State v. Benbow, 228 N.J. 417 (2016).

On January 30, 2017, defendant filed a petition for PCR in the Law Division, alleging he had been denied the effective assistance of trial and appellate counsel. Judge William A. Daniel heard oral argument on May 4,

2018, and thereafter filed a written opinion, in which he concluded that defendant had not established a prima facie case of ineffective assistance of counsel and denied defendant's request for an evidentiary hearing. The judge entered an order denying PCR. This appeal followed.

II.

On appeal, defendant argues that the PCR court erred by finding he did not present a prima facie case of ineffective assistance of counsel. He contends the matter should be remanded to the PCR court for an evidentiary hearing.

Initially, we note that an evidentiary hearing is only required on a PCR petition if the defendant presents a prima facie case in support of relief, the court determines that there are material issues of fact that cannot be resolved based on the existing record, and the court finds that an evidentiary hearing is required to resolve the claims presented. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). Furthermore, "[t]o establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b).

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-part test established in Strickland v. Washington, 466 U.S.

668, 693 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under the test, a defendant first "must show that counsel's performance was deficient." Strickland, 466 U.S. at 693. Defendant must establish that counsel's performance "fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid.

Defendant also must show "that the deficient performance prejudiced the defense." Ibid. To establish prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the matter. Id. at 698.

A. Defendant's Decision on Testifying.

Defendant argues that he presented the trial court with sufficient evidence to support his claim that his trial attorney failed to prepare him to testify and effectively induced him not to testify on his own behalf. We disagree.

On June 6, 2012, before defendant's trial counsel rested his case, the court questioned defendant about testifying on his own behalf:

THE COURT: You understand that you have -- everybody has, in this [c]ountry, the right to remain silent and for me to instruct the jury that they are in no way, shape or form to consider that in their deliberations or in any way use it against you?

THE DEFENDANT: I do.

THE COURT: Do you also understand you have the right to waive that right and take the stand and testify on your own behalf.

THE DEFENDANT: Yes.

THE COURT: Of course, if you do that you will be subject to cross-examination. You also understand that?

THE DEFENDANT: Yes.

THE COURT: Now have you discussed with your attorney whether or not you should testify or not testify?

THE DEFENDANT: Yes.

THE COURT: And you had the benefit of his input and advice?

THE DEFENDANT: Yes.

THE COURT: And he answered any questions you had on the subject?

THE DEFENDANT: Yes, he did.

9

THE COURT:  Did you have enough time to discuss this issue with him or do you need additional time to discuss it with him?

THE DEFENDANT:  I don't need any additional time.

The trial judge then asked defendant's counsel if he wanted additional time to discuss the matter with defendant.  Counsel stated he would like a few moments and he would "feel more comfortable" if he spoke with defendant one more time.  The judge told counsel to take "a few minutes" and to let him know when he was ready to proceed.

After a recess, the judge continued to question defendant.  The judge asked defendant if he needed additional time.  He said, "No."  The judge asked defendant what he had decided to do.  Defendant stated that he had decided he would not "take the stand."  The judge questioned defendant further:

THE COURT:  Anybody forcing you[,] pressuring you in any way to make this decision?

THE DEFENDANT:  No.

THE COURT:  You made this decision voluntarily after talking to your attorney?

THE DEFENDANT:  Yes.

THE COURT:  Now take a look at [p]age [twenty-one] of the draft that I have just given you.  You wish me to give that charge to the jury?

10

THE DEFENDANT: Yes.

The judge asked defendant's attorney whether he wanted to make a further record on this issue. Counsel stated that he wanted the record to reflect that he had spoken to defendant about testifying "a number of times" in his office, and that he had also spoken with him "today" about his son.

The record shows that earlier in the trial, the judge asked defendant's attorney if he wanted to "go through the preliminaries" and address whether defendant would testify. Defendant's attorney told the judge he wanted defendant "to see his son testify" so that defendant could decide "at that point" whether he wanted to testify.

On appeal, defendant argues that despite his statements on the record during the trial, the PCR court should have considered and given favorable weight to his certification, in which he stated that trial counsel effectively induced him not to testify. He contends that if the PCR court had adequately considered the certification, the court would have found that he presented a prima facie case of ineffective assistance of counsel and granted his application for an evidentiary hearing.

In his certification, defendant stated that before the trial, his attorney led him to believe he would not be found guilty because the State's case was "weak."

11

Defendant asserted that he was innocent and the allegations against him were false. He claimed his attorney told him he should not testify.

Defendant also stated that, toward the end of the trial, his attorney told him he "should brace for a possible conviction." Defendant asserted that if he had known the State's case was stronger than his attorney led him to believe, he "would have testified and professed [his] innocence." He stated that his attorney had no intention to call him as a witness and did not prepare him to testify.

Defendant stated that he "now" realizes he did not know what to expect during the trial. He claimed his attorney did not explain "the generalities" of giving trial testimony or inform him of the questions the attorney might ask. He stated that he did not have the information he needed to make an intelligent and informed decision on whether to testify on his own behalf.

Judge Daniel found that defendant made his decision not to testify after speaking at length with his attorney on several occasions, including after his son testified. There is sufficient credible evidence in the record to support the court's findings. As the judge found, the record does not support defendant's claim that his attorney effectively induced him not to testify. Instead, the record fully supports the judge's determination that defendant knowingly, voluntarily, and intelligently elected not to testify.

A-0962-18T3

B.  Cross-Examination of A.B.

Next, defendant argues that his attorney was ineffective because he failed to conduct a sufficiently thorough cross-examination of A.B.  Defendant notes that during the pre-trial hearing, A.B. had testified that while she was in the pool, defendant pulled her onto his lap.  She said defendant was "going up and down" and she could feel his "private part" against her buttocks.

Defendant notes that on cross-examination in that proceeding, A.B. acknowledged that when she was initially questioned by a detective, she claimed she did not know which part of defendant's body she could feel against her body.  She stated, however, that she knew the body part, but did not want to name it aloud when she gave her statement to the detective.  She explained that she referred to defendant's "private part" in the pre-trial hearing because her therapist told her to use that term.

Defendant argues that his trial attorney was ineffective because, at trial, counsel failed to elicit testimony that A.B. changed her statement about the part of defendant's body that she felt after speaking with her therapist.  He contends that, as a result of counsel's error, he was denied his right to confrontation under the Sixth Amendment to the United States Constitution.

13

The judge found, however, that trial counsel made a reasonable, tactical decision not to elicit testimony that A.B. changed her statement regarding defendant's body part upon the advice of her therapist. The judge explained that evidence that A.B. had seen a therapist might have lent credibility to A.B.'s testimony, and it would have been prejudicial to defendant.

The judge also noted that, in his cross-examination of A.B., defendant's attorney had established that in her initial statement to the detective, A.B. did not identify the part of defendant's body she felt, but she had testified in the pretrial hearing that she felt defendant's "private part." The judge stated that defense counsel had pointed out other inconsistencies in A.B.'s testimony.

In addition, the judge noted that, in his summation, defendant's attorney highlighted the inconsistencies in A.B.'s testimony and suggested that the incident in the pool could not have occurred as A.B. claimed because "two other children were just feet away . . . and there were others close by playing basketball." The judge stated that trial counsel "also pointed out that A.B. never complained to her sister, mother, or to [Hathaway], nor did she say anything to the two children playing in the pool."

The judge therefore found that defendant's counsel was not ineffective in his cross-examination of A.B. The judge also found that the outcome of the trial

14

A-0962-18T3

would not have been different if defense counsel had elicited this testimony that she changed her statement about the part of defendant's body she felt upon the advice of her therapist. The record supports the judge's findings.

Therefore, we conclude the PCR court correctly determined that defendant failed to establish a prima facie case of ineffective assistance of counsel and that an evidentiary hearing was not required.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15